

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

August 7, 2006

**BY HAND & ELECTRONIC FILING**

The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
500 Pearl Street, Room 920
New York, New York  10007

      Re:   <u>United States v. Mario Henriquez</u>
             05 Cr. 1314 (KMK)

Dear Judge Karas:

    The Government respectfully submits this letter in response to Mario Henriquez's ("Defendant") Motion To Dismiss Indictment 05 Cr. 1314 due to outrageous government conduct.  Based on the following reasons, the motion should be denied.

**BACKGROUND**

    The Defendant was arrested on or about December 2, 2005, on a complaint filed on or about May 31, 2001, which charged him with illegal reentry into the United States after having been previously deported for the commission of an aggravated felony in violation of Title 8, United States Code, Section 1326. On or about December 15, 2005, the above-referenced Indictment was returned, charging the Defendant with the same offense.

    On or about July 7, 2006, the Defendant filed a motion to dismiss the Indictment, pursuant to the protections of the Due Process Clause of the Fifth Amendment of the United States Constitution, due to what he claims was outrageous government conduct that led to his apprehension.  Specifically, the Defendant claims that government agents informed the Defendant's family that he had murdered a girl in California, questioned the Defendant's seventeen-year-old daughter and six-year-old son without their mother's permission, and threatened the mother that her children would be taken away from her by local authorities. (*See* Def.'s Mot. To Dismiss at 1-2.)

    In the Defendant's estimation, the government agents' outrageous actions inflicted psychological trauma on his family and consequently coerced him to surrender and make self-

incriminatory statements.  Also, according to the Defendant, the government agents' actions interfered with the Defendant's constitutional right to nurture and care for his children.[1]

## **DISCUSSION**

To succeed with a claim of outrageous government conduct, a defendant must show some "type of coercive action or outrageous violation of physical integrity or other egregious or outrageous government conduct."  *United States* v. *Jackson*, 345 F.3d 59, 67 (2d Cir. 2002).  The Second Circuit has "rarely sustained due process claims concerning government investigative conduct, stressing that the conduct involved must be 'most egregious' . . . and 'so repugnant and excessive' as to shock the conscience."  *United States* v. *Duggan*, 743 F.2d 59, 84 (2d Cir.1984).  The Second Circuit has identified as the "paradigm examples of conscience-shocking conduct . . . egregious invasions of individual rights, such as breaking into suspect's bedroom, forcibly attempting to pull capsules from his throat, and pumping his stomach without his consent."  *United States* v. *Rahman*, 189 F.3d 88, 130 (2d Cir. 1999).  Accordingly, under existing case law and "in view of the courts' well-established deference to the Government's choice of investigatory methods, the burden of establishing outrageous investigatory conduct is very heavy."  *Id*.  Additionally, "[i]n the vast majority of . . . federal court cases in which the defendant raised the outrageous government misconduct defense, the court ruled in favor of the government." *United States* v. *Bin Laden*, 2000 U.S. Dist. LEXIS 18957, at *24-*25 (S.D.N.Y. Jan. 2, 2001)(Sand, J.)(citing *United States* v. *Santana*, 6 F.3d 1, 4 (1st Cir. 1993)(collecting cases)).

One case in which the allegations made invoked the Second Circuit's sense of outrage was *United States* v. *Toscanino*, 500 F.2d 267 (2d Cir. 1974).  In *Toscanino*, the defendant, a foreigner, alleged that he was kidnapped by American agents in Uruguay, brought to Brazil, where he was tortured and drugged, and then abducted from Brazil into the United States to face criminal charges.  "The alleged government misconduct or

---

[1]  Defendant cites to *Stanley* v. *Illinois*, 405 U.S. 645, 651 (1972) to support this contention.  In *Stanley*, the Court held that an unwed father had an equal protection right to a hearing to determine his fitness as a parent before his children were removed from his custody.  Nowhere in that opinion does the Supreme Court suggest, nor should this Court extrapolate, that a parent's equal protection right to a hearing to determine their fitness as a parent should be interjected into the criminal context in connection with a motion to dismiss an indictment based on an allegation of outrageous government conduct.

lawlessness in *Toscanino* was so outrageous that, if the allegations were true, the conduct violated due process and the district court would be required to divest itself of jurisdiction over the defendant." *United States* v. *Romano*, 706 F.2d 370, 373 (2d Cir. 1983). The allegations in *Toscanino* were so outrageous, that:

> [t]he cruel, inhuman and outrageous treatment allegedly suffered by Toscanino . . . demanded that [the Second Circuit] provide him a remedy. Since there was no 'fruit' of the abduction which could be suppressed other than the conviction which ensued, [the Second Circuit] concluded that the sole effective remedy was to order Toscanino's release if he proved his allegations.

*United States* v. *Gengler*, 510 F.2d 62, 65 (2d Cir. 1975). However, "absent a set of incidents like that in *Toscanino*, not every violation by prosecution or police is so egregious that [it] requires nullification of the indictment." *Id*. at 65.

The Defendant's motion asks the Court to exercise its authority in a manner that is reserved "only in the rare case, where it is impossible to restore a criminal defendant to the position that he would have occupied vis-a-vis the prosecutor, [with the only remedy being] that the indictment may be dismissed." *United States* v. *Brown*, 602 F.2d 1073, 1077 (2d Cir. 1979)(quoting *United States* v. *Fields*, 592 F.2d 638, 648 (2d Cir. 1978)). Furthermore, "proper regard for the public interest in the prosecution of crimes counsels restraint in dismissing an indictment for deterrence purposes unless the course of official misconduct is a demonstrated, long-standing one. We have approved this extreme sanction only when the pattern of misconduct is widespread or continuous." *Id*.

The Government respectfully submits that even if the allegations of the Defendant are to be believed, they do not rise to the level of outrage requiring dismissal of the Indictment. The allegations most certainly do not rise to the *Toscanino* level of shocking the conscience, as there has been no allegation of kidnapping, drugging, or torture involving the law enforcement agents in this case. In fact, even assuming that the allegations here were true, they still do not appear to have the psychological impact of what was alleged to have happened in *Bin Laden*. In *Bin Laden*, one defendant claimed outrageous government conduct that included: 1) agents informing the defendant and his wife that they could be in danger from associates of Usama Bin Laden; 2) the government promising to assist the defendant in returning to the United States so that they could search and interrogate him when he arrived; and 3) agents lying to the

defendant about the disposition of property that had been seized from his residence in Nairobi. *United States* v. *Bin Laden*, 2000 U.S. Dist. LEXIS 18957, at *26 n.13 (S.D.N.Y. Jan. 2, 2001)(Sand, J.). Judge Sand was "not persuaded that, if true, the Defendant's allegations would constitute outrageous government conduct." *Id*.

Similarly here, even if true, the Defendant has not met the very heavy burden of establishing outrageous government conduct. *See Rahman*, 189 F.3d at 130. Since the Defendant cannot meet that very heavy burden, this is not one of those rare cases where a court must exercise its power to dismiss an indictment because it would be impossible to restore the Defendant to the position he would have occupied vis-a-vis the prosecutor. *See Brown*, 602 F.2d at 1077. Moreover, there is no allegation of a pattern of widespread and continuous misconduct by the agents in this case. *See id*. It suffices to say that whatever investigatory techniques the agents employed to apprehend the Defendant do not rise to the level of outrage that shocks the conscience.

## **CONCLUSION**

Based on the reasons set forth above, the Defendant has not met the burden of putting forth allegations, if true, which would constitute outrageous government conduct in this case. Therefore, the Government respectfully submits that the Defendant's motion should be denied.

        Respectfully Submitted,

        MICHAEL J. GARCIA
        United States Attorney

By:    /s/
        Loyaan A. Egal
        Assistant United States Attorney
        Telephone: (212) 637-2205

cc:  Richard F. Boulware, Esq.
     Counsel for Mario Henriquez