```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

UNITED STATES OF AMERICA           :

        - v -                      :
                                           05 Cr. 1314 (KMK)
MARIO HENRIQUEZ,                   :

                                   :
             Defendant.
                                   :
-----------------------------------X
```

**DEFENDANT MARIO HENRIQUEZ'S MOTION AND MEMORANDUM IN SUPPORT THEREOF TO WITHDRAW HIS PLEA AND DISMISS THE INDICTMENT**

> LEONARD F. JOY, ESQ.
> Federal Defenders of New York, Inc.
> Attorney for Defendant
>     **MARIO HENRIQUEZ**
> 52 Duane Street - 10th Floor
> New York, New York 10007
> Tel.: (212) 417-8713
> **PETER TSAPATSARIS, ESQ.**
> Assistant Federal Defender

TO: MICHAEL J. GARCIA, ESQ.
    United States Attorney
    Southern District of New York
    One St. Andrew's Plaza
    New York, New York 10007
    Attn.: **WILLIAM J. STELLMACH, ESQ.**
    Assistant United States Attorney

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X

UNITED STATES OF AMERICA         :

           - v -                 :    05 Cr. 1314 (KMK)

MARIO HENRIQUEZ,                 :

                                 :
                Defendant.
                                 :
---------------------------------X
```

**DEFENDANT MARIO HENRIQUEZ'S MOTION AND MEMORANDUM IN SUPPORT THEREOF TO WITHDRAW HIS PLEA AND DISMISS THE INDICTMENT**

The defendant, Mario Henriquez, hereby moves to (1) Withdraw his Plea and (2) Dismiss the Indictment on the ground that he was illegally deported after a fundamentally unfair proceeding that deprived him of administrative and judicial review, in violation of the Due Process Clause.

<u>STATEMENT OF FACTS</u>

Mr. Henriquez is charged in a one-count indictment. The sole count charges Mr. Henriquez with illegally returning to the United States after having been previously deported in violation of 8 U.S.C. § 1326. The facts below are set out in the Declaration of Peter N. Tsapatsaris ("Declaration") annexed as Exhibit A.

Mario Arnaldo Henriquez, a citizen of Ecuador, arrived in the United States, New York City, as a legal immigrant on September 23, 1961. He was one year old. He lived in the United

2

States as a lawful permanent resident until December 5, 1998, when he was deported to Ecuador.

Mr. Henriquez was deported because, on March 18, 1986, he pled guilty to conspiracy to distribute cocaine and possession with intent to distribute cocaine in the United States District Court for the District of Massachusetts. He was sentenced to sixty months of imprisonment, to be followed by thirty-six months of parole.

The INS did not initiate deportation proceedings against Mr. Henriquez until 1989. On May 9, 1989, the INS issued an order to show cause, alleging that he was deportable on the basis of his 1986 conviction, which was an aggravated felony. Mr. Henriquez had his first deportation hearing on July 17, 1989 in the United States Immigration Court in Boston, Massachusetts. At that hearing, the Immigration Judge advised Mr. Henriquez that he had the right to counsel and granted Mr. Henriquez an adjournment so that he could retain counsel.

On October 31, 1989, Mr. Henriquez appeared before the Court for a continuation of the hearing, and was represented by attorney Eva H. Clark. She stated to the Court that she had not yet discussed Mr. Henriquez's rights with him because the order to show cause had been lost. She informed the Court that she

would be applying for 212(c)[1] relief from deportation on Mr. Henriquez's behalf. The Judge set a filing deadline of December 15, 1989. A continuation of the hearing was scheduled for April 23, 1990.

On June 8, 1990, the hearing continued. Neither Mr. Henriquez nor his lawyer was present. The Court had not received an application for 212(c) relief known as an I-191 form. The Immigration Judge also noted that his clerk informed him that Ms. Clark's license to practice law had been suspended. A continuance was granted to February 25, 1991.

On February 25, 1991, the hearing recommenced. Mr. Henriquez was present and was not represented by an attorney. The Immigration Judge directed Mr. Henriquez to fill out a I-191 form and return it to the Court by March 15, 1991. The hearing was adjourned until April 4, 1991.

Shortly after this hearing, Mr. Henriquez contacted Ms. Clark and informed her of the events of the February 25 proceeding. Ms. Clark, whom he had paid $5,000, assured Mr. Henriquez that she was still capable of representing him, did not tell him that she had been disbarred, and advised Mr. Henriquez

---

[1] Prior to 1996, 8 U.S.C. § 1182(c) permitted the Attorney General to waive deportation for any lawful permanent resident alien who resided in the United States for at least seven consecutive years. This waiver is commonly known as 212(c) relief, because it was originally contained in section 212(c) of the Immigration and Nationality Act of 1952. In 1990, this section was amended to prohibit retroactively 212(c) relief for anyone convicted of an aggravated felony who served a term of imprisonment of at least five years on that conviction. This amendment does not apply to Mr. Henriquez, who served less than five years for his only criminal conviction.

4

that she would fill out the required forms. She also informed Mr. Henriquez that she would obtain an adjournment of the April 4, 1991, hearing, and would inform him of the new hearing date when it was scheduled. However, Ms. Clark never submitted any forms to the Court on Mr. Henriquez's behalf, never rescheduled the hearing and never informed Mr. Henriquez of his next court appearance. Within a few months, her phone was disconnected and Mr. Henriquez was unable to locate her.

On April 4, 1991, the hearing recommenced. Mr. Henriquez was not present and the Court had not received an I-191 application. The Immigration Judge ordered Mr. Henriquez to be deported, *in absentia*.

On October 1, 1998, Mr. Henriquez moved to reopen his deportation hearing, on the ground that he was not able to attend because he had not received notice that the hearing would continue on April 4, 1991. He was represented by Kerry William Bretz. Immigration Judge Billino W. D'Ambrosio denied Mr. Henriquez's motion because Mr. Henriquez had been informed of the April 4, 1991 date at the February 25, 1991 hearing. Mr. Bretz informed Mr. Henriquez that he was not eligible for 212(c) relief because the law had changed since his initial deportation. No appeal was filed. Mr. Henriquez was deported on December 5, 1998.

At the time he was ordered deported, Mr. Henriquez had lived in the United States for twenty-four years. He was married to

5

Anna Rodriguez, and the couple had one child who was a United States citizen, Eric William Henriquez. He was employed at Printed Circuit Corporation, making circuit boards, and was taking courses in business administration at night at Somerville Community College. He had earned a High School degree in Providence Rhode Island. Additionally, he had joined the Army Reserve, and was granted a general discharge due to illness. He had no criminal record aside from the conviction that was the basis of his deportation. Both of his parents lived in the United States and he had no family in Ecuador that he associated with.

## ARGUMENT

### POINT I

**MR. HENRIQUEZ SHOULD BE PERMITTED TO WITHDRAW HIS PLEA BECAUSE HE HAS A VALID DEFENSE TO THE CRIME HE IS ACCUSED OF.**

Under Federal Rule of Criminal Procedure 11(d)(2)(B), a defendant may withdraw a guilty plea after it has been accepted, but before sentencing, if "the defendant can show a fair and just reason for requesting the withdrawal." While the defendant bears the burden of showing that valid grounds for withdrawal exist, the language of Rule 11 "implies that motions to withdraw prior to sentence should be liberally granted." United States v. Rosen, 409 F.3d 535, 546 (2d Cir. 2005) quoting United States v. Gonzalez, 970 F.2d 1095, 1099 (2d Cir. 1992).

While the decision to grant a motion to withdraw a guilty plea is highly discretionary, the Second Circuit has set forth three criteria for considering whether a "fair and just reason" exists for withdrawal: (1) whether the defendant is asserting his innocence; (2) the time elapsed between the plea and the motion (the shorter the time, the more compelling the basis for withdrawal); and (3) any prejudice to the Government. Id., citing United States v. Schmidt, 373 F.3d 100, 102-103 (2d Cir. 2004).

These three criteria are clearly met in this case. As discussed in Point II below, Mr. Henriquez has a compelling claim of innocence to the crime of which he is accused. Furthermore, Mr. Henriquez pled guilty on June 6, 2007, less than a month and a half ago. Such a short time makes the case for Mr. Henriquez's withdrawal more compelling. Finally, the Government will suffer no prejudice from the withdrawal. This is an illegal reentry prosecution, thus any concern regarding the deterioration of evidence of the disappearance of witnesses are minimal compared to a prosecution for most other types of offense. The brief delay occasioned by this motion will do very little harm to the Government's case.

For these reasons, and those set out below, Mr. Henriquez should be permitted to withdraw his plea.

## POINT II

**BECAUSE MR. HENRIQUEZ WAS NOT LAWFULLY**

7

DEPORTED FROM THE UNITED STATES, THE GOVERNMENT CANNOT PROSECUTE HIM FOR VIOLATING 18 U.S.C. § 1326, AND THE INDICTMENT MUST THEREFORE BE DISMISSED.

The Due Process Clause prohibits the government from using a deportation as an element of a criminal prosecution where the deportation proceeding eliminated the right of the alien to obtain judicial review. United States v. Mendoza-Lopez, 481 U.S. 828 (1989). Title 8 U.S.C. § 1326(d), permits a defendant charged with illegal reentry to collaterally challenge the legality of the deportation, where: (1) he has exhausted those administrative remedies that were available to seek relief against the order; (2) defects in the underlying deportation proceeding deprived him of the right of judicial review; and (3) the deportation proceeding was "fundamentally unfair."

Mr. Henriquez's due process rights were violated during his deportation proceedings because he was denied an opportunity to apply for relief under §212(c) of the INA due to the ineffective assistance of his counsel and the denial of his motion to reopen his immigration proceeding. In addition, he meets all three of the elements of § 1326(d). Accordingly, his deportation cannot be used to establish his illegal reentry into the United States.

A. Exhaustion of Administrative Remedies

Mr. Henriquez exhausted his administrative remedies to the extend required by the law. He secured counsel in an attempt to apply for relief from deportation. It is only through the

8

ineffective assistance of his counsel, Eva H. Clark, that the application was not made. Although Ms. Clark informed both the immigration judge and Mr. Henriquez, on October 31, 1989, that she would apply for 212(c) relief on Mr. Henriquez's behalf, she never did. In addition, she failed to inform Mr. Henriquez of the date of his deportation hearing, which caused him to be deported in absentia, further frustrating his desire for relief from deportation.

When he appeared before the Immigration Court later, on October 1, 1998, Mr. Henriquez did the only thing he could, apply for his hearing to be reopened. This request was denied. His lawyer further informed him that he was not eligible for 212(c) relief because the law had changed since his deportation. The decision of the immigration judge was not appealed. Under these circumstances, the exhaustion requirement is satisfied. The Second Circuit has held that when an immigrant is informed he is not eligible for 212(c) relief, and fails to appeal an immigration judge's decision, the waiver of appeal is not "knowing and intelligent" and therefore an appeal is not required to satisfy the exhaustion requirement. United States v. Sosa, 387 F.3d 131, 136 (2d Cir. 2004) (exhaustion requirement satisfied when alien was not informed of his right to 212(c) relief and therefore did not seek an administrative appeal); see also United States v. Calderon, 391 F.3d 370, 371 (2d Cir.

2004)(exhaustion requirement excused when alien was informed by the immigration judge and his counsel that he had no right to 212(c) relief).

In addition, the Second Circuit has ruled that statutory exhaustion requirements can be excused in order to prevent "manifest injustice." Marrero-Pichardo v. Ashcroft, 374 F.3d 46, 52-53 (2d Cir. 2004). Marrero-Pichardo, involved an alien who was ordered deported for sustaining eleven DUI convictions and sought review of his deportation through a habeas petition. However, the alien had not exhausted his administrative appeals before the Board of Immigration Appeals ("BIA") as was required by 8 U.S.C. § 1252(d)(1) before a habeas petition could be filed. The District Court dismissed the petition, but on appeal, the Second Circuit ruled that an exception to statutory exhaustion requirements exist in order "to prevent manifest injustice," and ordered reconsideration of the alien's petition. Id. The Court's analysis of what constituted manifest injustice rested in part upon the circumstances of the alien's life, noting, "Pichardo resided in the United States for over twenty-six years with his wife and daughter, and his extended family. He claims to have no ties with the Dominican Republic." Id. At 54. Mr. Henriquez's circumstances are very similar to the alien in Marrero-Pichardo. At the time of his deportation, Mr. Henriquez had resided in the United States for over twenty years. His wife, child and

extended family were all in the United States, and he had no connection to the country of his origin. The circumstances of Mr. Henriquez's deportation from the only country he has ever known were similarly unjust, and it is a "manifest injustice" to prosecute him for returning.

Accordingly, the Court should excuse Mr. Henriquez's failure to exhaust his administrative remedies because 1) he did not knowingly and intelligently waive his right to appeal, and 2) requiring him to exhaust his administrative remedies would result in manifest injustice.

B. **Deprivation of Judicial Review**

Mr. Henriquez was also denied the opportunity for judicial review. Because of the ineffective assistance of his counsel, Mr. Henriquez was never able to have his 212(c) application ruled on. "Deprivation of the opportunity for judicial review can be established by demonstrating ineffective assistance of counsel, and the failure of counsel to file a § 212(c) application can constitute ineffective assistance of counsel." United States v. Perez, 330 F.3d 97, 101 (2d Cir. 2003).

The Second Circuit, in Perez and Rabiu v. INS, 41 F.3d 879, 992 (2d Cir. 1994), articulated a test to determine if ineffective assistance of counsel denied an alien the opportunity for judicial review. An alien must show that a competent

attorney would have filed for 212(c) relief, that there was a prima facie showing of 212(c) eligibility, and that the alien "could have made a strong showing in support of his application." Rabiu, 41 F.3d at 883. Mr. Henriquez's case satisfied all of these requirements.

The failure of his attorney to file a 212(c) application after stating that she would the deportation hearing satisfies the first factor. Perez, 330 F.3d at 102. Ms. Clark, Mr. Henriquez's attorney, informed the Court on October 31, 1989, that she would apply for 212(c) relief, but never did. She was accordingly ineffective under Perez and Rabiu. The fact that Mr. Henriquez was told himself, without the presence of an attorney, to apply for 212(c) relief at the February 25, 1991, hearing is immaterial. Mr. Henriquez is not a lawyer, has no legal education and is unfamiliar with immigration laws. When he was directed by the judge to fill out an I-191 form, he had no idea what 212(c) relief was, much less how to successfully apply for it. More importantly, Ms. Clark's ineffective representation continued after February 25, 1991. After her failure to appear, Mr. Henriquez confronted her and she informed him that she would fill out the forms and send them in, yet still never did so. In light of this, the events that occurred at the February 25, 1991, hearing can in no way be said to cure the fundamental unfairness created by the continuing ineffective assistance of Ms. Clark's

counsel.

Second, not only was Mr. Henriquez eligible for 212(c) relief, it is highly probable that such relief would have been granted. As a preliminary matter, Mr. Henriquez was statutorily eligible for such relief because he had resided in the United States as a lawful permanent resident for at least seven consecutive years and had not served a prison term of more than five years. 8 U.S.C. 1182(c).

Where these threshold requirements are satisfied, the immigration judge considering a § 212(c) application employs a balancing test, set out by the BIA in Matter of Marin, 1978 BIA Lexis 35, 16 I. & N. Dec. 581, 584 (August 4, 1978). This test requires the judge to "balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of § 212(c) relief appears in the best interests of this country." Id. Among the factors deemed adverse are the nature and underlying circumstances of the basis for the deportation, the presence of additional significant violations of the immigration laws, the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country. Id. Favorable considerations include family ties

13

within the United States, length of residency, hardship to the respondent and family if deportation occurs, service in the Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of a genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character. Id. See also, Molenda v. I.N.S., 998 F.2d 291, 295 (5th Cir. 1995)(citing Marin).

It is likely that, had Mr. Henriquez's attorney filed an application for 212(c) relief for him, the judge would have weighed these factors in his favor and granted him relief. Mr. Henriquez lived in the United States as a lawful permanent resident since he was one-year old. At the time he was ordered deported, he had lived here for twenty-four years. He was married and had a child who was a United States citizen. He was employed at Printed Circuit Corporation, making circuit boards, and was taking courses in business administration at night at Somerville Community College. He had earned a High School degree in Providence Rhode Island. Additionally, he had joined the Army Reserve, and was granted a general discharge due to illness. He had no criminal record aside from the conviction that was the basis of his deportation. Both of his parents lived in the United States and he had no family in Ecuador that he associated with. The only factor that weighs against Mr.

Henriquez is his sole criminal conviction, but this single factor is not sufficient to outweigh all the positive equities in his favor.

Indeed, around the time Mr. Perez was deported, many similarly situated aliens received § 212(c) relief. As noted by the Supreme Court in <u>I.N.S. V. St. Cyr</u>, 533 U.S. 289, 296 n.5 (2001), during this time more than half of the applications for § 212(c) relief were granted.

For these reasons, Mr. Henriquez was denied judicial review by the ineffective assistance of his counsel and would most likely have been granted 212(c) relief had the application been made.

## C. Fundamental Unfairness of the Deportation Proceedings

To demonstrate "fundamental unfairness," a defendant must prove that there was a fundamental procedural error in his deportation proceeding and that he was prejudiced by the error. <u>See</u> <u>United States v. Scott</u>, 394 F.3d 111, 117 (2d Cir. 2005). In <u>Perez</u>, the Second Circuit held that hte same test that determines whether a defendant was denied judicial review due to ineffective assistance of counsel is used to determine whether the deportaion proceeding was fundamentally unfair. 330 F.3d at 104. The Court stated:

> In considering earlier in this opinion whether Perez was deprived of the opportunity for judicial review, we found that he had shown that he had been deprived of

15

> effective assistance of counsel (i.e., that a fundamental procedural error had occrred) and that prejudice had resulted because he was eligible for § 212(c) relief and could have made a strong showing in support of such relief. Accordingly, he has satisfied the "fundamental unfairness" requirement.

Id. As discussed in Part II(B) above, the proceeding in the immigration court was fundamentally unfair because Mr. Henriquez was denied effective assistance of counsel, and has made a strong showing that he would have been granted 212(c) relief. Mr. Henriquez therefore satisfies the third and final prong required for relief under 8 U.S.C. § 1326(d).

For all the above reasons, Mr. Henriquez's deportation deprived him of due process and cannot be used as the basis to prosecute him for illegal reentry. Furthermore, his case meets the standards set out in 8 U.S.C. § 1326(d). Therefore, the Indictment must be dismissed.

**CONCLUSION**

For the foregoing reasons, it is respectfully requested that this Court (1) permit Mr. Henriquez to withdraw his plea and (2) dismiss the Indictment with prejudice because Mr. Henriquez was not lawfully deported and the Indictment accordingly fails to charge an offense.

Dated:   New York, New York
         July 13, 2007

                         Respectfully submitted,

                         LEONARD F. JOY, ESQ.
                         The Federal Defenders of New York, Inc.
                         By: _____
                         **Peter N. Tsapatsaris, ESQ.**
                         Attorney for Defendant
                            **Mario Henriquez**
                         52 Duane Street - 10th Floor
                         New York NY 10007
                         Tel.: (212) 417-8713