UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,           :

       - v. -                        :

                                     05 Cr. 1314 (KMK)

MARIO ARNALDO HENRIQUEZ,             :

          Defendant.             :

- - - - - - - - - - - - - - - x


**GOVERNMENT'S MEMORANDUM OF LAW**
**IN OPPOSITION TO THE DEFENDANT'S MOTION**
**TO WITHDRAW HIS GUILTY PLEA AND TO DISMISS THE INDICTMENT**


MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
*Attorney for the United States*
*of America*


WILLIAM J. STELLMACH
Assistant United States Attorney
   *- Of Counsel -*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT..............................................1

BACKGROUND........................................................2

    A.    The Defendant's Narcotics Conviction..................2

    B.    The Defendant's Deportation...........................2

          1.    July 17, 1989 Hearing...........................2

          2.    October 31, 1989 Hearing........................3

          3.    Clark Ceased Representing
              the Defendant...................................4

          4.    June 8, 1990 Hearing............................4

          5.    February 25, 1991 Hearing.......................5

          6.    April 4, 1991 Hearing...........................8

          7.    The Defendant's Motion
              to Reopen Deportation...........................9

          8.    The Defendant Waived Appeal.....................10

    C.    The Defendant's Illegal Re-Entry and Arrest..........10

    D.    Motion to Dismiss the Indictment.....................10

    E.    The Defendant's Guilty Plea..........................11

ARGUMENT.........................................................11

Point I - The Defendant Has Failed To Present
         A Fair And Just Reason To Permit
         Withdrawal Of His Guilty Plea.......................11

    A.    Applicable Law.......................................13

    B.    Discussion

          1.    The Defendant Cannot Collaterally
              Attack His Deportation Order....................15

              a.    Failure to Exhaust
                   Administrative Remedies...................16

b.    No Deprivation of Judicial Review..........22

c.    Deportation Was Fundamentally Fair.........24

i.    No Fundamental Procedural Error.......25

ii.    The Defendant Has Not
Shown Prejudice......................31

2.    The Defendant Was Lawfully Deported............34

Point II - The Motion to Dismiss
The Indictment is Meritless........................34

CONCLUSION...................................................35

## **LIST OF EXHIBITS**

Exhibit    Description

A          Order to Show Cause and Notice of Hearing
           issued May 9, 1989

B          Transcript of July 17, 1989 Deportation Hearing

C          Transcript of October 31, 1989 Deportation Hearing

D          Affidavit of Eva C. Clark sworn to July 20, 2007

E          Transcript of June 8, 1990 Deportation Hearing

F          Transcript of February 25, 1991 Deportation Hearing

G          Transcript of April 4, 1991, Deportation Hearing

H          Notice of Deportation dated April 4, 1991

I          Motion to Reopen dated September 28, 1998

J          Decision of the Immigration Judge dated
           October 27, 1998

K          Letter from Kerry W. Bretz dated November 16, 1998

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - x

**UNITED STATES OF AMERICA,**          :

              **- v. -**               :

                                       **05 Cr. 1314 (KMK)**

**MARIO ARNALDO HENRIQUEZ,**           :

              **Defendant.**           :

- - - - - - - - - - - - - - - - x

### PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in opposition to the defendant's motion to withdraw his guilty plea and to dismiss the Indictment.[1]  As described below, the defendant cannot satisfy any of the three conjunctive requirements set forth in Title 8, United States Code, Section 1326(d) to merit collateral review of his deportation, and he therefore has failed to assert a "fair and just" reason to withdraw his guilty plea under Federal Rule of Criminal Procedure 32(e).  Even if considered, however, the ineffective assistance claim on which this motion rests is flatly belied by the record, including the defendant's own statements at the time of deportation and a sworn affidavit from his allegedly ineffective counsel that categorically denies the defendant's assertions. Accordingly, the motion should be denied.

---

[1]     "Def. Mem." refers to the defendant's motion, and "Declaration" or "Dec." refers to the Declaration of Peter N. Tsapatsaris dated July 14, 2007, attached as Exhibit A to the motion.

**BACKGROUND**

**A.   The Defendant's Narcotics Conviction**

In 1986, the defendant was convicted, following a

guilty plea, in the District of Massachusetts of conspiracy to

distribute cocaine and possession with intent to distribute

cocaine, in violation of Title 21, United States Code, Sections

846 and 841(a)(1), respectively.  He was sentenced to sixty

months' imprisonment, to be followed by thirty-six months'

special parole.

**B.   The Defendant's Deportation**

That conviction subjected the defendant, a non-citizen,

to deportation proceedings, which commenced in 1989 and led to a

series of hearings culminating in his deportation in 1998.

**1.   July 17, 1989 Hearing**

On May 9, 1989, the Immigration and Naturalization

Service issued a show cause order to the defendant.  See Order to

Show Cause and Notice of Hearing issued May 9, 1989 (the "Show

Cause Order"), a copy of which is attached hereto as Exhibit A.

As set forth in the Show Cause Order, the defendant was a citizen

of Ecuador who had resided in the United States since 1961 as a

legal permanent resident.  The Show Cause Order notified the

defendant that he faced deportation under the immigration law

because of his narcotics conviction, and directed him to appear

before an immigration judge to show cause why a deportation order

2

should not be entered.

At his first appearance before the immigration judge on July 17, 1989, the defendant was again advised that he could face deportation, and the judge adjourned the proceedings to enable the defendant to retain counsel. See Transcript of July 17, 1989 Deportation Hearing, a copy of which is attached hereto as Exhibit B.[2]

## 2.   **October 31, 1989 Hearing**

At the next scheduled proceeding on October 31, 1989, the defendant appeared together with newly retained counsel, Eva H. Clark. See Transcript of October 31, 1989 Deportation Hearing, a copy of which is attached hereto as Exhibit C.  The court recessed to allow counsel to confer with the defendant regarding the Show Cause Order, which the defendant had lost. (Tr. 1:20-3:14 (Ex. C)).

When the hearing resumed, the defendant, through counsel, admitted the allegations and conceded that he was subject to potential deportation to Ecuador.  (Tr. 3:20-4:3 (Ex. C)).  Counsel also indicated that the defendant would apply for relief under Section 212(c) of the Immigration and Naturalization

---

[2]       All transcripts of the deportation hearings were prepared by the Government from a cassette tape containing all five proceedings that was previously produced to the defense on December 16, 2005.

Act of 1952.[3] (Tr. 4:6-7 (Ex. C)). The judge then ordered the
Section 212(c) waiver application to be submitted no later than
December 15, 1989, and stated that absent any extensions he would
issue a deportation order if the waiver was not submitted by that
deadline. (Tr. 4:16-22 (Ex. C)).

### 3. **Clark Ceased Representing the Defendant**

Following the hearing, Clark's license to practice law
in Massachusetts was administratively suspended for one year
because of her failure to pay bar dues. See Affidavit of Eva C.
Clark dated July 20, 2007 (the "Clark Affidavit"), a copy of
which is attached hereto as Exhibit D. To comply with that
suspension, Clark ceased practicing law entirely, and advised
clients both of her status and their need to retain substitute
counsel. (Clark Affidavit, ¶¶ 5, 9 (Ex. D)).

### 4. **June 8, 1990 Hearing**

The next hearing date was scheduled for April 23, 1990,
which was rescheduled by the court's order for June 8, 1990. See
Transcript of June 8, 1990 Deportation Hearing, a copy of which
is attached hereto as Exhibit E. However, the defendant failed
to appear.

The court noted that there had been no Section 212(c)
application (Tr. 1:18-24 (Ex. E)), and that it had attempted to

---

[3]     Prior to its elimination in 1996, Section 212(c) enabled aliens
who had been legal permanent residents for at least seven years to apply to
the Attorney General for a discretionary waiver of deportation. See 8 U.S.C.
§ 1182(c), Pub. L. 104-208 .

4

contact Clark at the number listed in her notice of appearance.
After discovering that Clark's number was disconnected, the court
contacted the Massachusetts State Bar Association and learned
that Clark has been suspended for administrative reasons on
April 5, 1990, approximately three weeks prior to the notice for
the rescheduled hearing date being sent to her office address.
(Tr. 1:26-37 (Ex. E)).  In addition, the court also
unsuccessfully attempted to reach the defendant by telephoning
the contact number that he had left with his parole officer.
(Tr. 2-3 (Ex. E)).  The court then rescheduled the next
proceeding for February 25, 1991, and directed notice to be
mailed to two addresses that the defendant had left with his
parole officer.  (Tr. 3:18-25 (Ex. E)).

## 5.    **February 25, 1991 Hearing**

At the next scheduled proceeding on February 25, 1991,
the defendant appeared and the hearing resumed.  See Transcript
of February 25, 1991 Deportation Hearing, a copy of which is
attached hereto as Exhibit F.  During that proceeding, the
defendant advised the court that Clark was no longer representing
him, and the court in turn informed the defendant that he needed
to apply for Section 212(c) relief by March 15, 1991, or his
application would be deemed to have been waived.  The court also
unambiguously informed the defendant that he should be prepared
to apply for his waiver by the deadline and to proceed with a

waiver hearing regardless of whether he was represented by
counsel.

At the outset, the court advised the defendant that the
instant proceeding was a deportation trial for which three hours
had been reserved. (Tr. 1:19-28 (Ex. F)). Acknowledging that he
had received notice, the defendant explained that he was
unprepared to proceed; he blamed his readjustment to society
following his imprisonment (which had ended several years
previously) and a "little lack of responsibility on my part" in
contacting his lawyer. (Tr. 2:1-12 (Ex. F)). When the court
inquired when the defendant had contacted his lawyer, the
defendant replied:

> [W]ithin the last month or whatever. And I
> met him in court. Because I had another, I
> had another lawyer, and then I just, when she
> didn't show up, so he represented me that
> day.

(Tr. 2:18-20 (Ex. F)) (emphasis added).

Indeed, the defendant had informed the lawyer from the
Immigration Service that Clark was no longer representing the
him, and that the defendant had already approached potential
substitute counsel:

> Your Honor, before you came on the bench the
> respondent indicated that he did have a prior
> attorney and um, that attorney, has let go of
> the case. And the respondent has sought
> other representation, and actually the
> attorney is Roger Watt, and he I think is
> from Rhode Island. And I think the
> respondent said he was supposed to have

6

> spoken to Mr. Watt this past Friday, but
> wasn't able to get him.  And also, wasn't
> able, well supposed to be in, he gave the
> attorney the Form I-191, but hasn't done it.[4]

(Tr. 2:22-29 (Ex. F)) (emphasis added).  Consequently, the

Immigration Service consented to an adjournment to allow either

Mr. Watt or another attorney appear with the defendant at the

deportation trial.  (Tr. 2:30-32 (Ex. F)).

The court then observed that it would be lenient and

grant the proposed adjournment, notwithstanding the repeated

delays in the proceedings, in light of the suspension of the

defendant's prior counsel.  (Tr. 3:1-5 (Ex. F)).  At that point,

the defendant asked whether Clark was no longer a lawyer, and the

court advised: "[t]hat's the indication from the record."  (Tr.

3:6-7 (Ex. F)).  The court, however, warned the defendant that at

the time of the next hearing:

> [Y]ou will have to be prepared to either go
> forward with your lawyer, if you have a
> lawyer, or you'll have to speak for yourself,
> if you don't have a lawyer.  Do you
> understand that?

(Tr. 3:12-14 (Ex. F)).  The defendant responded that he did.

The court then identified the specific forms that the

defendant would need to complete to apply for Section 212(c)

relief, even directing him where he could locate the form in the

building.  (Tr. 3:18-28 (Ex. F)).  Indeed, the court told the

---

[4]     The Form I-191 was the INS application for Section 212(c) relief.

7

defendant to pick up a pencil and to then write down on the paper in front of him the various types of supporting documents that should be submitted with the completed waiver forms, which the court identified.  (Tr. 4:10 - 5:15 (Ex. F)).  Regarding the actual hearing, the court also explained that the defendant could call witnesses.  (Tr. 5:26-28 (Ex. F)).

The court emphasized that the waiver forms were due by March 15, 1991, and that the defendant should be prepared to go forward with the hearing scheduled for April 4, 1991, regardless of whether he had retained counsel.  (Tr. 5:19 - 6:22 (Ex. F)). In fact, the court again stressed to the defendant the serious consequences of failure to apply timely for waiver: "if your application is not filed by March 15, then the Court is going to take it that you've abandoned your application and are not interested."  (Tr. 6:17-19 (Ex. F)).  Before adjourning, the defendant acknowledged that he understood: "So, it's up to me get these things in."  (Tr. 6:24 (Ex. F)).

### 6.    **April 4, 1991 Hearing**

On the scheduled April 4, 1991, hearing date, the defendant failed to appear.  See Transcript of April 4, 1991, Deportation Hearing, a copy of which is attached hereto as Exhibit G.  Noting that the court had advised the defendant in person of the March 15, 1991, deadline for his waiver application, and the absence of any application, the court deemed

8

the application abandoned and signed the deportation order.

A copy of the deportation order, together with a notice informing the defendant of his right to appeal, was then mailed to the address that the defendant had provided at the last appearance. See Notice of Deportation dated April 4, 1991, a copy of which is attached hereto as Exhibit H; Tr. 7:13-16 (Ex. F) (providing mailing address to which notice was sent).

### 7.    **The Defendant's Motion to Reopen Deportation**

In 1998, the defendant retained Kerry William Bretz, who moved to reopen the deportation hearing. See Motion to Reopen dated September 28, 1998, a copy of which is attached hereto as Exhibit I. In that motion, the defendant claimed that he "never received notice" of the April 4, 1991, hearing.  (Ex. I, ¶ 3).  The defendant never asserted in that motion that he lacked notice because of any representations that Clark had made to him.

The immigration judge denied that motion based on the fact that the defendant had been hand-served notice of the April 4, 1991, hearing when he appeared in person on February 25, 1991. See Decision of the Immigration Judge dated October 27, 1998, a copy of which is attached hereto as Exhibit J. The cover page of the decision explicitly noted that the defendant had a right to appeal the denial of his motion to the Board of Immigration Appeals (the "BIA").

9

## 8.    The Defendant Waived Appeal

By letter dated November 16, 1998, Mr. Bretz advised

the Immigration Service that the defendant would not appeal the

denial of his motion, and stated that: "[t]he respondent has

advised that he wants to be deported as soon as possible." See

Letter from Kerry W. Bretz dated November 16, 1998, a copy of

which is attached hereto as Exhibit K.   The defendant was then

deported to Ecuador on December 5, 1998.

## C.    The Defendant's Illegal Re-Entry and Arrest

The defendant was arrested on December 2, 2005, on a

complaint filed on May 31, 2001, that charged him with illegal

reentry into the United States after having been previously

deported for the commission of an aggravated felony, in violation

of Title 8, United States Code, Section 1326.   On

December 15, 2005, the Indictment was returned, charging the

defendant with the same offense.

## D.    Motion to Dismiss the Indictment

On or about July 7, 2006, the defendant filed a motion

to dismiss the Indictment, pursuant to the protections of the Due

Process Clause of the Fifth Amendment of the United States

Constitution, due to what he claimed was outrageous government

conduct that led to his apprehension.   Specifically, the

defendant alleged that government agents informed the defendant's

family that he had murdered a girl in California, questioned the

10

defendant's seventeen year-old daughter and six year-old son
without their mother's permission, and threatened the mother that
her children would be taken away from her by local authorities.
On March 26, 2007, following argument and a hearing, this Court
denied that motion.

## E.    The Defendant's Guilty Plea

On May 9, 2007, the defendant pled guilty to the sole
count in the Indictment, without the benefit of a plea agreement.
The plea proceeding, which the defendant does not challenge,
complied with the requirements of Rule 11.  Among other things,
this Court confirmed that: (1) the defendant was competent to
enter a guilty plea; (2) he was aware of the charges against him
and the maximum penalties associated with those charges; (3) he
was aware of the constitutional rights that he was waiving; and
(4) a factual basis existed for the plea.  During the course of
the plea proceeding, the defendant admitted that, following his
deportation to Ecuador after conviction for an aggravated felony,
he had reentered this country without permission.

### ARGUMENT

### Point I

## The Defendant Has Failed To Present A Fair And Just
## Reason To Permit Withdrawal Of His Guilty Plea

The defendant asserts that he has a valid defense to
the Indictment because he was unlawfully deported as a result of
the alleged ineffective assistance of counsel during his

11

deportation proceeding. That argument is wrong on both the law and the facts.

As a threshold matter, the defendant cannot collaterally attack his deportation order. In 1998, following denial of his motion to reopen the deportation hearing, the defendant concedes that he made a knowing and intelligent waiver of any appeal. That decision was made in consultation with counsel other than Ms. Clark and does not involve any purported ineffective assistance by her. By failing to exhaust his administrative remedies and expressly waiving further judicial review, the defendant cannot satisfy any one, much less all three, conjunctive requirements in Title 8, United States Code, Section § 1326(d) to merit collateral review of his deportation.

Furthermore, the defendant's attacks on the fundamental fairness of the deportation hearing based on Clark's alleged ineffectiveness are flatly belied by the record, which shows that Clark ceased representing the defendant fully a year before the court issued the deportation order. In her sworn affidavit, Clark categorically denies making any of the representations on which the defendant now purports to have relied and which form the basis of his ineffective assistance claim. Moreover, Clark's denials are fully corroborated by the record, particularly the defendant's own statements to the court and Immigration Service that Clark had "let go of the case" and he had approached substitute counsel. In any event, even if Clark made the

12

representations about which the defendant now complains (for the first time in the sixteen years later since they purportedly occurred), the defendant cannot prove any prejudice because his claims about the likelihood of receiving Section 212(c) relief are entirely speculative.

Accordingly, the defendant cannot meet his burden under Federal Rule of Criminal Procedure 32(e) of showing a "fair and just reason" for the withdrawal of his guilty plea.

## A.    **Applicable Law**

A guilty plea is no mere formality, but a "grave and solemn act." United States v. Hyde, 520 U.S. 670, 677 (1997) (punctuation omitted). The detailed procedures set forth in Fed. R. Crim. P. 11(b) for the taking of guilty pleas, which the defendant does not dispute were complied with by this Court, are intended to ensure that such pleas are not "merely tentative." Id. at 676. A district court nonetheless has discretion, pursuant to Fed. R. Crim. P. 11(d), to allow a defendant to withdraw a guilty plea "if there are valid grounds for withdrawal and if granting the motion would be fair and just, giving due regard to any prejudice the government might suffer as a result." United States v. Couto, 311 F.3d 179, 185 (2d Cir.2002) (citing United States v. Maher, 108 F.3d 1513, 1529 (2d Cir.1997)). A district court's denial of a motion to withdraw a plea is reviewed for abuse of discretion. United States v. Juncal, 245 F.3d 166, 171 (2d Cir.2001). "A district court abuses its discretion if it

13

bases its ruling on a mistaken application of the law or a
clearly erroneous finding of fact." Couto, 311 F.3d at 185
(citation and internal punctuation omitted).

Although Rule 32 provides that a defendant may move to
withdraw a guilty plea upon a showing of any "fair and just
reason," it is basic that "[a] defendant has no absolute right to
withdraw his plea of guilty." United States v. Williams, 23 F.3d
629, 634 (2d Cir.1994) (construing Rule 32(d) (1993)), cert.
denied, 513 U.S. 1045 (1994); see, e.g., United States v.
Gonzalez, 970 F.2d 1095, 1099-1100 (2d Cir.1992) (construing Rule
32(d) (1991)); United States v. Torres, 129 F.3d 710, 715 (2d
Cir.1997) (construing Rule 32(e) (1996)); Maher, 108 F.3d at 1529
(2d Cir.1997) (same); United States v. Karro, 257 F.3d 112, 117
(2d Cir. 2001) (construing Rule 32(e) (2000)). Indeed, the
defendant misreads United States v. Rosen, 409 F.3d 535, 546 (2d
Cir. 2005) for the proposition that Rule 11 "implies that motions
to withdraw prior to sentence should be liberally granted." See
Def. Mem., 6. In fact, the Circuit in Rosen, quoting Gonzalez,
stated that:

> Pursuant to Fed.R.Crim.P. 32(d) [(1991)], a
> district court may permit withdrawal of a
> guilty plea prior to sentencing "upon a
> showing by the defendant of any fair and just
> reason." Although this standard implies that
> motions to withdraw prior to sentence should
> be liberally granted, ... a defendant who
> seeks to withdraw his plea "bears 'the burden
> of satisfying the trial judge that there are
> valid grounds for withdrawal, taking into
> account any prejudice to the government.'"
> .... The Government is not required to show

14

> prejudice when opposing a defendant's motion
> to withdraw a guilty plea where the defendant
> has shown no sufficient grounds for
> permitting withdrawal; however, the presence
> or absence of such prejudice may be
> considered by the district court in
>
> exercising its discretion....

Gonzalez, 970 F.2d at 1099-1100 (emphasis added).

Thus, "[a] defendant has no automatic entitlement to have such a motion granted, for [s]ociety has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." Maher, 108 F.3d at 1529 (internal quotation marks omitted).  In sum, when considering a motion to withdraw a guilty plea, a district court must closely scrutinize the grounds raised and the record of the defendant's allocution so as not to "degrade the otherwise serious act of pleading guilty into something akin to a move in a game of chess." Hyde, 520 U.S. at 677.

**B.   Discussion**

**1.   The Defendant Cannot Collaterally
        Attack His Deportation Order**

The defendant's collateral attack on his deportation order should be rejected.  A criminal defendant's right to raise a collateral challenge to a deportation order underlying a Section 1326 prosecution is subject to statutory limitations.  Specifically, the defendant must demonstrate that: (1) he

15

"exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him] the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). The Second Circuit has ruled that "[s]tatutory exhaustion requirements such as that set forth in § 1326(d) are mandatory, and courts are not free to dispense with them." United States v. Gonzalez-Roque, 301 F.3d 39, 47 (2d Cir. 2002) (internal quotation marks omitted). Here, the defendant cannot satisfy any of the three conjunctive prongs set forth in Section 1326(d), and he is therefore barred from seeking collateral review of his deportation order.

### a. **Failure to Exhaust Administrative Remedies**

The defendant's contention that the alleged misadvice of Clark satisfied the requirement that he exhausted all administrative remedies is mistaken. At the time of the denial of his motion to reopen the deportation hearing, the defendant could have appealed to the BIA. Instead, he waived his appeal and expressly consented to deportation: his lawyer informed the Immigration Service that "the respondent will not be filing an appeal" and that "the respondent has advised me that he wants to be deported as soon as possible." (Ex. K). This knowing and intelligent waiver of further administrative remedies precludes any claim that the defendant satisfied his statutory exhaustion

16

requirement.

Because the BIA decision is the final administrative determination in immigration proceedings, an appeal of an immigration judge's order to the BIA satisfies the exhaustion requirement. See 8 C.F.R. § 242.21 (1996); Mejia-Ruiz v. INS, 51 F.3d 358, 364 (2d Cir. 1995). In the cases upon which the defendant relies, the immigration judges in open court incorrectly advised the aliens that they were ineligible for Section 212(c) relief. See Def. Mem., 9-11 (citing United States v. Sosa, 387 F.3d 131, 136 (2d Cir. 2004); United States v. Calderon, 391 F.3d 370, 375 (2d Cir. 2004)). Because a failure to exhaust administrative remedies bars collateral review "only where an alien's waiver of administrative review was knowing and intelligent," the waivers by Sosa and Calderon were held to be unknowing and unintelligent. See Sosa, 387 F.3d at 136; Calderon, 391 F.3d at 375.

By contrast, the defendant made a knowing and intelligent waiver of administrative review. Unlike Sosa and Calderon, the defendant was on notice about his eligibility for

17

Section 212(c) relief.[5]  Myopically focusing on alleged defects
in the deportation hearing, the defendant ignores altogether the
later administrative proceedings in his case when he waived his
right to further review of his claims.  Following entry of the
deportation order, the defendant retained new counsel, Kerry
William Bretz, and moved to reopen his deportation hearing in
1998, arguing that he had never received notice of the April 4,
1991, hearing.  (Ex. I).  The court denied that motion, finding
that the defendant had received hand-service of that hearing at
the February 25, 1991, hearing.  (Ex. J).  The denial of the
defendant's motion to reopen the deportation hearing did not
satisfy the exhaustion requirement.  Administrative remedies
remained available to the defendant, specifically an appeal to
the BIA.  Indeed, the immigration judge's decision denying the
motion explicitly noted the right to appeal to the BIA.  (Ex. J
(cover page)).

        The fact that the defendant claims ineffective
assistance of counsel does not obviate the exhaustion

---

[5]        While the defendant now protests that "he had no idea what 212(c)
relief was, much less how to successfully apply for it," Def. Mem., 12 (a
claim not factually supported in the Declaration), the record of the
deportation hearing belies that claim.  The immigration judge advised the
defendant of exactly what was at stake with respect to an application for
Section 212(c) waiver.  Unlike the immigration proceedings in the cases that
the defendant cites, the immigration judge here informed the defendant of: his
eligibility for Section 212(c) relief, which forms to submit, where to find
those forms, the necessary supporting documents to make a compelling
application, the evidence he could and should submit at the next hearing, and
the consequences of failure to file.  (Tr. 3:19-5:24 (Ex. F)).  The record is
devoid of any evidence that the defendant expressed uncertainty, much less
incomprehension, about either what was taking place in court or Section
212(c).  In any event, the defendant's complaint that he did not understand
Section 212(c) relief at the time of the February 25, 1991, hearing is
irrelevant because he later moved to reopen his deportation hearing.  (Ex. I).

requirement, as illustrated in each of the cases on which the defendant relies. See United States v. Perez, 330 F.3d 97, 101 (2d Cir. 2003) (exhaustion requirement satisfied where defendant appealed denial of motion to reopen deportation hearing to the BIA); Rabiu v. INS, 41 F.3d 879, 882 (2d Cir. 1994) (exhaustion requirement satisfied where ineffective assistance claim briefed in appeal to the BIA of the denial of motion to reopen). Notwithstanding their respective ineffectiveness claims, the Second Circuit found that both Perez and Rabiu, unlike the defendant, had satisfied their statutory threshold because of their BIA appeals. Indeed, Perez and Rabiu raised their ineffectiveness claims in their BIA appeals, which the defendant notably did not do here. (Ex. I). The defendant thus not only waived administrative review, he essentially waived the ineffectiveness argument. See Arango-Aradondo v. INS, 13 F.3d 610, 614 (2d Cir. 1994) (ineffective assistance claims should be presented to the BIA and then appealed to the circuit).

The waiver of administrative review here is clear. The immigration judge advised the defendant of his right to appeal, but the defendant chose not to appeal the denial of his motion and expressly consented to deportation. (Ex. K). Moreover, the defendant admits that he made that decision upon advice of Mr. Bretz, whose effectiveness is not disputed. See Dec., ¶ 14; see also Calderon, 391 F.3d at 375 (representation by counsel weakens claim that waiver is not knowing or intelligent). That knowing

19

and intelligent waiver precludes the defendant's claim that he satisfied the exhaustion requirement in Section 1326(d)(1).

To evade that statutory bar, the defendant suggests that Your Honor should excuse any "statutory exhaustion requirements" to prevent "manifest injustice," citing Marrero-Pichardo v. Ashcroft, 374 F.3d 46, 52-53 (2d Cir. 2004). See Def. Mem., 10. In Marrero-Pichardo, however, the facts presented were truly exceptional and markedly distinct from those here. Pichardo was ordered deported for two state court convictions of driving while under the influence of alcohol, a crime that at the time qualified as a "crime of violence" and therefore an aggravated felony within the scope of Title 8, United States Code, Section 1227(a)(2)(A)(iii). See Marrero-Pichardo, 374 F.3d at 49-50. Subsequently, the Second Circuit held in a separate case that DUIs did not constitute crimes of violence. Following that decision, Pichardo filed a habeas petition on grounds unrelated to the recent circuit decision, and that petition was then dismissed.

Under Title 8, United States Code, Section 1252(d)(1), Pichardo needed to exhaust his administrative remedies by appealing the deportation order to the BIA before he could file a habeas. The Second Circuit, however, found that applying the exhaustion requirement in these circumstances would be a "manifest injustice." In addition to citing Pichardo's personal background, as the defendant notes, the Circuit relied on a

20

number of factors that clearly do not apply here. Id., at 54. First, and most compellingly, the crime for which Pichardo was being deported was no longer an aggravated felony, and the court observed that Pichardo's claim was "virtually certain to succeed if considered on appeal." Id. Second, the Government never raised the issue of administrative exhaustion below. Id. Third, Pichardo had not been represented by counsel in connection with his deportation, in contrast to the defendant who in 1998 had the assistance of a lawyer whose effectiveness he does not dispute. Id. In short, there were compelling and unique facts in Marrero-Pichardo that are not found here.

The defendant made a knowing and intelligent waiver of his administrative remedies in 1998. Regardless of his allegations relating to Clark, he had new counsel and any prior ineffective assistance seven years previously did not affect the informed decision that he made not to pursue further appeals. However sympathetic the defendant's background may be, or that of any illegal reentrant with long-standing ties to this country, applying the exhaustion requirement contained in the statute to this case works no "manifest injustice." Consequently, under Section 1326(d)(1), the defendant did not exhaust his administrative remedies, and cannot now raise a collateral due process challenge to his deportation order.

21

### b. **No Deprivation of Judicial Review**

Similarly, the defendant cannot now complain about
being deprived of the very judicial review that he waived in
1998. In attempting to satisfy this prong of Section 1326(d)(2),
the defendant argues that: "[b]ecause of the ineffectiveness of
his counsel, Mr. Henriquez was never able to have his 212(c)
application ruled on." Def. Mem., 11. The defendant's
contention that he was deprived of judicial review is flatly
precluded by his waiver and express consent to deportation.
Again, the defendant had ample opportunity for judicial review
because he filed a motion to reopen his deportation hearing, and
had the right to then appeal that decision to the BIA. By
failing to pursue his appeal, let alone failing to raise the
ineffective assistance claim at all, the defendant cannot now
claim that the only "remedy" is dismissal of the Indictment. See
United States v. Bailey, 56 F.Supp.2d 381, 385 (S.D.N.Y. 1999)
(Rakoff, J.) (defendant-alien's failure to avail seek judicial
review of BIA denial of ineffectiveness claim bars challenge to
lawfulness of deportation).

Interpreting Section 1326(d)(2), the Second Circuit has
indicated that "judicial review" encompasses both direct appeal
from a deportation order and judicial relief by way of habeas
corpus. See United States v. Copeland, 376 F.3d 61, 67-68 (2d
Cir.2004). The court stated that, where there was no statutory
right to appeal a deportation order directly to a federal court,

22

but habeas review was technically available, "judicial review will be deemed to have been denied if resort to a habeas proceeding was not realistically possible." Id. at 68 (emphasis added). The court specified that the opportunity for judicial review will be deemed to have been denied "where the interval between entry of the final deportation order and the physical deportation is too brief to afford a realistic possibility of filing a habeas petition." Id. In light of his consent to deportation, the defendant cannot--and does not--complain about the speed of his deportation depriving him of the opportunity of judicial review: over a month elapsed between the denial of his motion and his actual deportation. See Copeland, 391 F.3d at 376 (speedy deportation can limit ability to seek judicial review).

Perez, upon which the defendant heavily relies, is instructive. As the defendant notes, the Second Circuit in Perez held that an attorney's failure to file an application for Section 212(c) relief constituted ineffective assistance of counsel and, thus, effectively deprived the defendant-alien of the opportunity for judicial review. See Perez, 330 F.3d at 101-03. "[F]or an alien to prevail on a claim of ineffective assistance of counsel, he or she 'must show that his counsel's performance was so ineffective as to have impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause.'" Id. at 101. However, unlike the defendant, Perez had appealed to the BIA over the denial of his

23

motion to reopen his deportation hearing, thus exhausting his administrative remedies (as the Second Circuit expressly noted), and Perez was deported on the same day that his counsel filed that appeal. See id. There was therefore no doubt that the ineffectiveness of Perez's counsel, coupled with the speed of deportation, deprived Perez of judicial review.

Here, several years intervened between the alleged ineffectiveness and deportation, enabling the defendant to retain new, undisputedly effective counsel to litigate his deportation. The consequences of any alleged misadvice by Clark were therefore ameliorated by the defendant's opportunity to seek relief, illustrated by the very fact that he moved to reopen the deportation hearing. Far from exhausting his administrative remedies, the defendant then expressly waived further judicial review, foreclosing his ability to satisfy Section 1326(d)(2).

### c. **Deportation Was Fundamentally Fair**

Finally, the defendant argues that his deportation was fundamentally unfair because of Clark's alleged ineffective assistance. See Def. Mem., 15-16. Although deportation hearings are civil proceedings, the Second Circuit has recognized claims for ineffective assistance of counsel based on the Due Process Clause. See Rabiu, 41 F .3d at 882. To prevail on such a claim, the defendant "must show that counsel's performance was so ineffective as to have impinged upon the fundamental fairness" of the immigration proceeding in violation of due process. Id. To

24

establish "fundamental unfairness" under § 1326(d)(3), a defendant "must show both a fundamental procedural error and prejudice resulting from that error." United States v. Fernandez-Antonia, 278 F.3d 150, 159 (2d Cir. 2002).

The defendant cannot meet his burden. Following her administrative suspension, Clark stopped practicing law, and categorically denies in her sworn affidavit that she ever made any of the representations about which the defendant now complains. Those denials are corroborated by the record, including the defendant's own statements. In any event, the defendant cannot show any prejudice arising from the alleged ineffectiveness because his claims that he would have received Section 212(c) are unsupported and entirely speculative.

Even if there was merit to the defendant's allegations that the deportation hearing was fundamentally unfair and that he was prejudiced, however, his attack on the deportation order still fails. Collateral review here is statutorily barred because of the defendant's failure to exhaust administrative remedies and to show that he was deprived of judicial review. Accordingly, this Court should reject the defendant's collateral attack on his deportation order because of his inability to satisfy any one of Section 1326(d)'s three conjunctive  prongs.

### i.  **No Fundamental Procedural Error**

As an initial matter, the defendant has not even raised a factual issue about Clark's effectiveness. The only support

25

for the defendant's claims rests on the affidavit of his current counsel, who lacks any firsthand knowledge of the facts.  It is axiomatic that an affidavit not based on personal knowledge is simply inadequate to entitle a movant to a hearing, much less relief.  See, e.g., United States v. Maldonado-Rivera, 922 F.2d 934, 973 (2d Cir. 1990) (affirming district court's refusal to credit attorney affidavit not based on personal knowledge); United States v. Gillette, 383 F.2d 843, 848-49 (2d Cir. 1967) (attorney affidavit insufficient basis for ordering hearing regarding motion to suppress search proceeds); United States v. Ruggiero, 824 F. Supp. 379, 393-94 (S.D.N.Y. 1993) (affirmation based upon "information and belief" "completely inadequate to raise a factual issue justifying a hearing").  Standing alone, the Declaration thus does not suffice even to create a factual issue regarding Clark's ineffectiveness.

Even if given considered, the ineffectiveness claim itself is meritless because the record shows that Clark ceased representing the defendant nearly a year before the deportation order issued.  Clark was administratively suspended on April 5, 1990.  (Tr. 1:26-37 (Ex. E)).  To comply with that order, Clark "ceased practicing law entirely" for the one year duration of that suspension.  See Clark Aff., ¶ 5.  Contrary to the defendant's claims that he spoke with her after the February 25, 1991, hearing and that her number was disconnected "a few months" after that (Dec., ¶ 13), the record supports

26

Clark: the immigration judge at the June 8, 1990, hearing noted

that the court was unable to reach Clark because her office phone

had been disconnected.  (Tr. 1:30-33 (Ex. E)).[6]  In any event,

the immigration judge clearly advised the defendant at the

February 25, 1991, hearing that Clark was no longer a lawyer.

(Tr. 3:6-7 (Ex. F)).

        After that hearing, the defendant alleges that,

notwithstanding her suspension, Clark "assured Mr. Henriquez that

she was still capable of representing him, and did not tell him

that she was disbarred."  (Dec., ¶ 13).  That claim is flatly

contradicted by the record.  Clark unequivocally denies

concealing her status and her consequent disabilities:

> First, I never concealed my administrative
> suspension from any client, and, in fact,
> affirmatively disclosed my status to my
> clients.  In light of the amount of time that
> has elapsed, I do not recall any specific
> inquiry from Mr. Henriquez regarding my
> administrative suspension.  However, I can
> represent to this Court that, <u>far from
> failing to disclose my suspension, I
> necessarily had to advise clients to obtain
> competent counsel to replace me in light of
> my suspension</u>.  <u>Concealing my status,
> particularly in a pending immigration case,
> would have made no sense, and, in any event,
> is not the type of conduct in which I
> engaged</u>.  Without minimizing my misconduct
> leading to my suspension, I wish to emphasize
> that my suspension did not arise from ethical
> improprieties or acts of dishonesty.

(Clark Aff., ¶ 9) (emphasis added).

---

[6]     Exactly how the defendant was able to reach Clark at a telephone
number that already had been disconnected for several months prior to the
February 25, 1991, hearing, and when the court itself could not reach her, is
unexplained.

27

The record is likewise clear that at the
February 25, 1991, hearing, the defendant himself informed the
court and the Immigration Service that Clark was no longer his
attorney.  Immediately prior to that proceeding, the defendant
had advised the Immigration Service that he was replacing Clark
with new counsel:

> Your Honor, before you came on the bench the
> respondent indicated that he did have a prior
> attorney and um, that attorney, has let go of
> the case.  And the respondent has sought
> other representation, and actually the
> attorney is Roger Watt, and he I think is
> from Rhode Island.  And I think the
> respondent said he was supposed to have
> spoken to Mr. Watt this past Friday, but
> wasn't able to get him.  And also, wasn't
> able, well supposed to be in, he gave the
> attorney the Form I-191, but hasn't done it.

(Tr. 2:22-29 (Ex. F)) (emphasis added).  He also discussed his
prospective new lawyer with the court, acknowledging that he had
shown a "little lack of responsibility" in failing to contact his
lawyer, Mr. Watt.  (Tr. 2:11-20 (Ex. F)).

The defendant's claims that he then contacted Clark
after this proceeding (and notably not before) and relied on her
advice as his lawyer is unsupported by the record.  In fact, the
record is clear that the defendant had shown a serious lack of
responsibility, as the immigration judge noted (Tr. 2:13-14 (Ex.
F)), by not contacting Mr. Watt, his new counsel.  The defendant
never claimed that he was relying on Clark or that his previous
non-appearance on June 8, 1990, or lack of readiness for the
hearing was attributable to her.

Indeed, the immigration judge repeatedly admonished the defendant to file for relief no later than March 15 and to be ready to proceed at the April 4 hearing, regardless of whether he had counsel.  In fact, the court even identified: the particular forms that the defendant needed to file to apply for Section 212(c) relief, where in the building those forms could be located, supporting documentation that he would need for the deportation hearing.  (Tr. 3:16 – 4:15 (Ex. F)).  The defendant explicitly acknowledged that he understood: "So, it's up to me get these things in."  (Tr. 6:24 (Ex. F)).  In fact, the defendant failed to appear, just as he had ignored the notice of the June 8, 1990, hearing.

Based on this record, the entry of the deportation order on April 4, 1991, can be traced directly to the defendant's continued irresponsibility.  Under penalty of perjury, Clark unambiguously denies the defendant's allegations that she advised him she would handle the Section 212(c) application and apply for an adjournment of the hearing date:

> [F]ollowing my administrative suspension, I did not represent to any former, current, or prospective client that I was in a position to do any of the things that the Tsapatsaris Declaration claims that I said I would do on Mr. Henriquez's behalf.  Because of my administrative suspension, I was expressly prohibited from continued appearances and making filings.  That prohibition extended to both court and administrative matters, including immigration proceedings. Accordingly, I did not represent to Mr. Henriquez (or anyone else) that I was going to obtain adjournments or prepare documents

29

                    in connection with any proceedings
                    whatsoever.

(Clark Aff., ¶ 10) (emphasis in original).

        The defendant's assertions also collapse under their
own weight.  By his own account, he spoke with Clark following
the February 25, 1991, hearing, and she then disappeared.  (Dec.,
¶ 13).  Seven years then elapsed between entry of the deportation
order and deportation itself in 1998.  During that time, the
defendant does not claim to have ever contacted the immigration
authorities to ascertain the status of his deportation, or to
have received any notice regarding the case.  That is
particularly puzzling because copies of the deportation order and
notice of right to appeal to the BIA were mailed to the same
Brooklyn address that he identified on February 25, 1991, as his
contact address.  Compare Tr. 7:13-16 (Ex. F) with Ex. H.
Apparently, after Clark disappeared, the defendant either forgot
or ignored the fact that he was facing deportation to Ecuador,
which he had last seen in 1960.  That simply defies belief.

        More incredible is the indisputable fact that the
defendant raises Clark's alleged ineffectiveness now for the
first time in the sixteen years since it purportedly occurred.
At no point during the immigration proceedings, including his
motion to reopen the deportation hearing, did the defendant ever
claim Clark was ineffective.  (Ex. I).  Instead, he sought to
reopen his deportation hearing on the grounds that he had not
been advised of the April 5, 1991, hearing, which was plainly

                              30

inconsistent with the actual record of the February 25, 1991,
hearing. (Ex. I). It is only before Your Honor that these
claims are raised--sixteen years after the alleged fact. If
those claims were credible, it begs the question of why the
defendant failed to assert until now and omitted any mention of
it during his motion to reopen the deportation hearing
purportedly tainted as a result of the ineffectiveness.

Contrary to the defendant's assertions, the record
shows that Clark ceased representing the defendant nearly a year
prior to entry of the deportation order, and corroborates her
categorical denials that she made any of the representations
alleged in the Declaration. In sum, the defendant has failed to
raise a factual issue regarding Clark's representation, much less
provided a credible basis for finding a fundamental procedural
error in his deportation.

### ii. The Defendant Has Not Shown Prejudice

Even if Clark did provide the ineffective counsel
alleged, the defendant has not shown that he was prejudiced by
the failure to apply for Section 212(c) relief.

In Copeland, the court clarified that "prejudice" in
the context of § 1326(d) "is shown where there is a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different." Copeland,
376 F.3d at 73 (emphasis added) (internal quotation marks
omitted) (quoting Strickland v. Washington, 466 U.S. 668, 694

31

(1984)). Here, the defendant ultimately consented to deportation. Thus, any failure to apply for Section 212(c) relief appears irrelevant in light of his decision, unlike Perez and Rabiu, to seek additional remedies and judicial review.

Moreover, on the record before this Court, the defendant's claim that it is "likely" that his application for Section 212(c) relief would have been granted can only be characterized as highly speculative. See Def. Mem., 14. In determining whether to grant discretionary relief under § 212(c), an immigration judge "'must balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of section 212(c) relief appears in the best interests of this country.'" See Lovell v. INS, 52 F.3d 458, 461 (2d Cir. 1995). Adverse factors included: (1) the nature and circumstances of the exclusion ground; (2) the presence of additional immigration law violations; (3) the existence of a criminal record and its nature, recency and seriousness; and (4) the presence of other evidence indicative of an alien's bad character or undesirability as a permanent resident. Id. Favorable factors, by comparison, included: (1) family ties within this country; (2) residence of long duration in this country; (3) evidence of hardship to the alien and the alien's family upon deportation; (4) Armed Forces service; (5) a steady employment history; (6) community service; (7) property or

business ties; (8) evidence attesting to good character; and (9) proof of genuine rehabilitation.  Id.

Of the nine "positive equities" that were considered in determining whether to grant § 212(c) relief, the defendant based on this record would have satisfied two: family ties within the United States because his family resided here, and residence of long duration in the country because he had lived here since he was a child.  The applicability of the remaining factors, however, is completely speculative: there is no evidence in the record for any of the remaining favorable factors.  While the defendant asserts that the only factor weighing against him was "his sole conviction," that statement discounts entirely the likely significant weight that would be accorded a recent, federal conviction for narcotics offenses involving cocaine distribution.  In fact, the defendant also would appear unable to have satisfied the "property or business ties" factor: he admitted during the February 25, 1991, hearing that "I have a lot of debts" (Tr. 4:10-26 (Ex. F)), which the court itself indicated should be submitted "even though that's not the sort of thing that might be inclined to help you in this kind of case."  (Tr. 4:27 - 5:1 (Ex. F)).  Evidence relating to his purported service in the Reserves, his employment, or any of the remaining factors is simply not before this Court.

The Government does not dispute that the defendant was eligible for Section 212(c) relief, and likely satisfied some

33

favorable factors (as well as clearly unfavorable ones arising
from his serious narcotics conviction). The record, however, is
insufficient to indulge in anything more than rhetorical
flourishes at this point. Thus, the defendant has failed to make
any real showing of prejudice arising from his failure to apply
for a waiver, aside from the self-serving and conclusory claims
contained in the motion. On this record, the defendant has not
provided enough support for Your Honor to conclude that were was
a "reasonable probability" that, if he had applied, Section
212(c) relief would have been granted to the defendant.
Consequently, even if the allegations of Clark's ineffectiveness
were valid, the defendant can show no prejudice that rendered his
deportation fundamentally unfair.

## 2. **The Defendant Was Lawfully Deported**

For the foregoing reasons, the defendant's deportation
was lawful and he therefore has no valid claim of actual
innocense of the crime charged in the Indictment. Accordingly,
he cannot show a "fair and just reason" to withdraw his plea
under Rule 32(e), and his motion should be denied.

### Point II

#### The Motion to Dismiss the Indictment is Meritless

The defendant's motion to dismiss the Indictment should
likewise be denied. At the core of this motion are the claims of
Clark's ineffectiveness, which, for the reasons above, are
legally and factually deficient. Furthermore, even if this Court

34

concluded that the defendant's plea should be withdrawn, "[w]here a defendant withdraws a guilty plea, that does not entitle him to dismissal, but a trial." See, e.g., United States v. Franco, 2003 WL 21305352, at *6 (S.D.N.Y. June 6, 2003) (McKenna, J.).

## CONCLUSION

For all the foregoing reasons, the Government respectfully requests that the Court deny the defendant's motions to withdraw his guilty plea and to dismiss the Indictment.

Dated: July 30, 2007
       New York, New York

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By:  William J. Stellmach
     William J. Stellmach
     Assistant United States Attorney
     Telephone: (212) 637-2101

35

## CERTIFICATE OF SERVICE

LAUREN McDONOUGH deposes and says that she is employed in the Office of the United States Attorney for the Southern District of New York.

That on July 30, 2007, she caused a copy of the attached Government's Memorandum of Law in Opposition to the Defendant's Motion to Withdraw His Guilty Plea and to Dismiss the Indictment to be served by Federal Express on:

> Peter N. Tsapatsaris, Esq.
> The Legal Aid Society
> Federal Defender Division
> 52 Duane Street, 10th Floor
> New York, New York 10007

I declare under penalty of perjury that the foregoing is true and correct, pursuant to Title 28, United States Code, Section 1746.

LAUREN McDONOUGH

Executed on: July 30, 2007
            New York, New York